TUCKER v. KIRKHAM.

(District Court, D. Connecticut. March 22, 1912.)

No. 1,663.

SHIPPING (§ 54*)—INJURY TO BARGE IN DOCK—LIABILITY.

A libel in tort by the owner of a barge against the charterer to recover for an injury to the barge, alleged to have been caused by the negligence of respondent in not having the bottom of his dock where she discharged in a fit and proper condition and not notifying libelant of the dangers there existing, held not sustained by the evidence, from which it appeared that libelant knew that the barge must lie on the bottom at low water, that the bottom of he dock was smooth and in proper condition, and that the injury was caused by the barge being caught at low tide

with one side over an undredged bank at some distance from the wharf, of which the master had been repeatedly warned.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 219–221; Dec. Dig. § 54.*]

In Admiralty. Suit by Bernard Tucker, as owner of the barge Safety, against Thomas A. Kirkham, and cross-libel against libelant. Decree for respondent, and cross-libelant.

James D. Dewell, Jr., and Avery F. Cushman, for libelant.
Marsh, Stoddard & Day, for respondent and cross-libelant.

PLATT, District Judge. Let us first get the issues firmly fixed in our minds. The libel is stated by the proctors who framed it to be "in a cause of tort," so that it is in no sense founded upon a breach of contract. Paragraph 3 alleges in substance that the libelant's barge Safety sailed in tow under a charter party between libelant and respondent; that she went to respondent's dock at Bridgeport, getting there at about 10:30 a. m., on November 14, 1909; that up to the time of the injury she was tight, staunch, seaworthy, well manned, apppareled, and equipped; that by the charter party sufficient water was guaranteed the barge "to and at" the respondent's wharf; that she was found to be leaking before her discharge was completed; that while unloading, owing to "lack of water at said dock and landing place," she rested on the bottom at low water; that the dock had "many uneven and rough places on the bottom"; and that the "unevenness of the said bottom of the landing place" produced the injuries later stated in detail.

The gist of the action is in paragraph 4, which I will insert verbatim:

"That the said injuries were *wholly caused* by the negligence and want of care on the part of the respondent, in not having the *bed or bottom* of *his* said *landing place* in a fit and proper condition to receive your libelant's barge Safety and the cargo thereon laden. That the said respondent well knew the condition of the *bed or bottom of said dock* and *landing place,* but failed to notify your libelant or the master of the said barge Safety of the *dangers there existing,* and that the libelant or the master of the said barge had no knowledge of said conditions previous to the aforesaid injury, and that the respondent is in fault in the particulars above named." (Italics are mine.)

The respondent denies the material allegations of the libel, and says that whatever damage the barge suffered while unloading was due solely to the negligence of the libelant and his agents. In his cross-libel, he sets forth that the master reported to him that the barge was leaking badly and asked him to employ such help as was needed to save the barge. This he did, at an expense of $100.60, which the original libelant, by his agent, approved and directed him to pay, promising to repay the same to him at once. These injuries were the ones caused by the negligence of original libelant, for which damages are sought in the cause of tort.

An examination of the proofs presented by each party, directed to the issues which they themselves framed, show several interesting

things. In the first place, there were no uneven or rough places on the bottom of the respondent's dock or landing place; on the contrary, the whole bottom was sandy, covered with some mud, and sloped off gradually into the deeper water. At low water the barge was bound to rest on the bottom and slide away from the edge of the dock; but at high water she would again float, and could be brought up again to the dock, so that unloading might go on. If this had been all, there would have been no difficulty in discharging the cargo, without harm to the barge. Then, again, there was, except by indirection, no charter party between libelant and respondent. The charter party was originally entered into by libelant with the I. P. Thomas & Sons Company. After numerous letters and much negotiation, the respondent signed the document. His letters to Mr. Jones of the I. P. Thomas & Sons Company are objected to, because they are statements by a party to his own agent, and because they tend to vary the terms of a written instrument.

The first objection is futile, because Jones read them to libelant, who was seeking information about respondent's dock. The second objection is unsound, because, as I learn from the proofs on the trial, they tell the truth about the condition of the water at the dock and show that the indefinite expression "sufficient water guaranteed" could not have meant in libelant's mind, in the day and time of it, what his proctors now seek to read into them. Respondent's letters, coupled with the testimony given by Jones in his deposition, show that libelant knew his barge must lie on the bottom in low water and with that knowledge signed the charter party. On the general principles of pleading, this state of the proof ought to put an end to the libelant's contention. It positively fails to measure up to the allegations of fact set forth in the libel.

The proctors for the libelant, however, in an ingenious way, assert with great vigor that such a view of the case is technical and narrow, and that to throw them out for such a reason would subvert justice. The proofs show, beyond what I have set down, that respondent had a kind neighbor with dock facilities like his own, which they used interchangeably, and that the two frontages were ample for the berthing and discharge of the Safety. Beyond the joint dock facilities, however, came a spot upon the river front without a dock, which had not been sufficiently dredged, or, if it had been dredged, had been permitted to fill up again, so that at low water there was, at a short distance from the bank of the stream and in line with the dock front, only about three feet of water. While unloading certain hatches it is claimed that it was necessary to extend the barge beyond the dock over this undredged frontage, and that, since this necessity existed, it was the duty of the respondent to see to it that such extension could be made with safety. In other words, that having invited the libelant to his dock, he is bound not only to give him a fit and safe dock, but to provide enough water at any place where the emergencies of unloading might force any portion of the barge to lie, or, if we turn to the charter party, that when he guaranteed sufficient water *at* the dock, he guaranteed it at all places in the vicinity which the barge might need to occupy while unloading.

The purpose of the admiralty law, as I understand it, is to do right between man and man. The "square deal" is the basic principle upon which it rests. Taking, however, the broadest possible view of the situation, and wiping out every obstacle to libelant's progress, the proofs establish positively that the cause of damage to the barge was that the portion which projected over this shallow place was caught at low water and hung up, thereby causing a straining and wrenching of her timbers and much damage. If the likelihood that such a thing might happen had been kept from the knowledge of the master of the barge, and was not a thing which was self-evident to the most casual observer, there would be, on the broad principle to which I have alluded, a reason for charging the respondent with a lack of the duty which he owed to the libelant.

The trouble with the case from this viewpoint is that the evidence satisfies me that the respondent took unusual pains, from the moment the barge landed at his dock, to impress upon the master the danger which might come to his barge if he were caught at low water on the shallow place beyond the dock. One would think that the master ought to have seen the danger without being told; but I am satisfied that he was told, and told so often that he could not have failed to appreciate the danger. This being so, the respondent, from any view of the situation, technical or broad, is absolutely free from any neglect of duty.

It follows that the libel must be dismissed, with costs, and the cross-libelant is entitled to a decree.